MAK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JaMarcus Fennell,

      Plaintiff,

    v.

Charles Horvath, Corrections Officer John
Colarusso, Lieutenant Luis Cruz, Lieutenant
Heinrich, Corrections Officer Michael
Gazzano, Corrections Officer Jason Wagner,
Lieutenant Rinker, Lieutenant Diacogiannis,
Corrections Officer Waterman, Corrections
Officer Crowley, Corrections Officer
Thorman, Corrections Officer Francis,
Corrections Officer Nicholas, and
Corrections Officer LaFragola,

      Defendants.

Civil Action No. __ __ 19cv4183

**FILED**

**SEP 1 1 2019**

KATE BARKMAN, Clerk
By_____Dep Clerk

## COMPLAINT

This action relates to and makes similar allegations as two actions in this District,

recently dismissed voluntarily, both before District Judge Mark Kearney: *Fennell v. Horvath*

(No. 18-4870) and *Fennell v. Northampton County* (No. 19-1972). Plaintiff JaMarcus Fennell

("Plaintiff" or "Mr. Fennell") brings this action for damages against Defendants Charles

Horvath, Corrections Officer John Colarusso, Lieutenant Luis Cruz, Lieutenant Heinrich,

Corrections Officer Michael Gazzano, Corrections Officer Jason Wagner, Lieutenant Rinker,

Lieutenant Diacogiannis, Corrections Officer Waterman, Corrections Officer Crowley,

Corrections Officer Thorman, Corrections Officer Francis, Corrections Officer Nicholas, and

Corrections Officer LaFragola (collectively, "Defendants") under 42 U.S.C. § 1983 for

violations of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as follows:

## NATURE OF THE ACTION

1.     Mr. Fennell was confined as a pre-trial detainee at the Northampton County Prison ("NCP") from approximately July 27, 2018 until his release on June 4, 2019.  During his incarceration, Mr. Fennell exercised his right to grieve the conditions of his confinement, and eventually, file complaints pro se under § 1983.  Defendants engaged in a retaliatory campaign designed and intended to punish Mr. Fennell for exercising his rights and intimidate him into abandoning his efforts.  Defendants' campaign culminated on February 15, 2019, when Mr. Fennell was physically and sexually abused during what should have been a routine cell extraction.

2.     Mr. Fennell suffered personal injuries — including, without limitation, injuries to his hand, wrist, and face, pain and suffering, loss of life's pleasures, and emotional distress — as a result of Defendants' actions, and he seeks compensatory damages, nominal damages, punitive damages, reasonable attorneys' fees, costs, and other such relief as the Court deems just and proper.

## THE PARTIES

3.     Plaintiff Jamarcus Fennell is a resident of Pennsylvania who was confined at NCP during the events relevant to this action, but is neither a prisoner nor a pretrial detainee as of the date of this complaint.

4.     Defendant Charles Horvath is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was an investigator at NCP.  Defendant Horvath is sued in his individual capacity.

5.    Defendant John Colarusso is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP. Defendant Colarusso is sued in his individual capacity.

6.    Defendant Luis Cruz is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a lieutenant at NCP. Defendant Cruz is sued in his individual capacity.

7.    Defendant Heinrich is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a lieutenant at NCP. Defendant Heinrich is sued in his individual capacity.

8.    Defendant Michael Gazzano is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP. Defendant Gazzano is sued in his individual capacity.

9.    Defendant Jason Wagner is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP. Defendant Wagner is sued in his individual capacity.

10.    Defendant Rinker is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a lieutenant at NCP. Defendant Rinker is sued in his individual capacity.

11.    Defendant Diacogiannis is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a lieutenant at NCP. Defendant Diacogiannis is sued in his individual capacity.

12.     Defendant Waterman is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP.  Defendant Waterman is sued in his individual capacity.

13.     Defendant Crowley is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP.  Defendant Crowley is sued in his individual capacity.

14.     Defendant Thorman is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP.  Defendant Thorman is sued in his individual capacity.

15.     Defendant Francis is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP.  Defendant Francis is sued in his individual capacity.

16.     Defendant Nicholas is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP.  Defendant Nicholas is sued in his individual capacity.

17.     Defendant LaFragola is an individual believed to be a resident of Pennsylvania who, at all times relevant to this action, was a correctional officer at NCP.  Defendant LaFragola is sued in his individual capacity.

### JURISDICTION AND VENUE

18.     This is an action under § 1983 implicating the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

20. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred here.

## FACTUAL BACKGROUND

21. Mr. Fennell was incarcerated at NCP as a pre-trial detainee beginning on or about July 27, 2018.

### August 13, 2018 Interrogation

22. Not long after his incarceration, on the afternoon of August 13, 2018, Defendant Horvath summoned Mr. Fennell to an interrogation room at NCP.

23. Mr. Fennel did not know why he had been summoned by Defendant Horvath.

24. When Mr. Fennell arrived, he asked if Defendant Horvath was his lawyer. Defendant Horvath responded "No, but you're in the right spot."

25. Defendant Horvath informed Mr. Fennell that Defendant Horvath had been listening to Mr. Fennell's telephone calls and had determined that the conversations were associated with, *inter alia*, illegal dealings or illegal contraband.

26. · At first, Defendant Horvath did not tell Mr. Fennell that he had been investigating, *inter alia*, what he believed to be communications between Mr. Fennell and a former inmate who Defendant Horvath thought was involved in the introduction of contraband in the jail as well as being involved in the legal drug culture (the "Former Inmate").

27. Because of the vagueness of Defendant Horvath's allegations and the reference to illegal dealings or illegal contraband, and Mr. Fennell's awareness of his pending criminal charges, Mr. Fennell requested an attorney and asked to be read his Miranda rights.

- 5 -

28.     Defendant Horvath refused to desist his questioning, refused to summon an attorney for Mr. Fennell, refused to read Mr. Fennell his Miranda rights, and told Mr. Fennell that he was required to answer the questions.

29.     Defendant Horvath then specifically asked Mr. Fennell about the alleged communications with the Former Inmate. Defendant Horvath also alleged that Mr. Fennell's then-girlfriend Tashwanna Sigman was receiving money from the mother of NCP inmate John Hofer, and asked Mr. Fennell the reason for this.

30.     Mr. Fennell refused to answer further questions and attempted to leave the interrogation room.

31.     Defendant Horvath prevented Mr. Fennell from leaving the interrogation room.

32.     Mr. Fennell experienced a panic attack, convulsions, and nausea.

33.     Defendant Horvath filed a formal misconduct against Mr. Fennell for, *inter alia*, refusing to answer his questions, and Mr. Fennell was punished by removal of privileges (e.g., telephone privileges) and transfer to E-Tier for 45 days.

34.     E-Tier is referred to by inmates as "solitary confinement" or "the hole" and involves drastically reduced privileges of all types.

35.     Defendant Horvath is a prison investigator who is capable of, and has in the past, investigated and provided evidence to support criminal charges against prisoners. *See, e.g.*, https://www.lehighvalleylive.com/easton/2018/05/county_prisoner_got_suboxone_i.html.

36.     Defendant Horvath knows that subjects of criminal investigations are entitled to their Fifth and Sixth Amendment Rights. *See id.* ("When interviewed by Horvath, who advised McCarthy of his rights").

37. Defendant Horvath's questioning of Mr. Fennell was intentionally vague as to the subject matter so as to potentially elicit incriminating responses.

38. Defendant Horvath knowingly and intentionally refused to afford Mr. Fennell his Fifth and Sixth Amendment rights in furtherance of his intention to elicit incriminating responses.

39. Defendant Horvath retaliated against Mr. Fennell and punished him for asserting his Fifth and Sixth Amendment rights.

40. As a direct and proximate cause of Defendant Horvath's actions, Mr. Fennell suffered adverse medical effects, a transfer to E-Tier including a substantial reduction in privileges, and he was exposed to the further abuse detailed below.

## August – December, 2018 Mistreatment

41. After the incident with Defendant Horvath, Mr. Fennell was transferred to E-Tier.

42. During the relevant times from August to December, 2018, Defendant Colarusso was a corrections officer working on E-Tier.

43. On August 23, 2018, Defendant Colarusso relocated Mr. Fennell into a cell shared by Aaron Wiggins, who was an enemy of Mr. Fennell's.

44. Mr. Fennell explained to Defendant Colarusso that Mr. Wiggins was his enemy, and requested to be moved.

45. Defendant Colarusso threatened Mr. Fennell and his family, and called him a "snitch" for the first of what would be many times in the following months.

46. It is well known that being called or labeled a "snitch" will lead to assaults, attacks, and unwanted negative interactions with other inmates.

47.     Mr. Fennell asked for the assistance of a Lieutenant but Defendant Colarusso denied his requests.

48.     Defendant Colarusso ordered Mr. Fennell to urinate while watching through the glass window in his cell door. Mr. Fennell refused and called for a Lieutenant.

49.     Defendant Colarusso again threatened Mr. Fennell and then discharged mace into Mr. Fennell's cell while telling Mr. Wiggins to cover his face while he sprayed Mr. Fennell. Mr. Fennell was able to avoid being struck by the mace.

50.     Mr. Fennell reported the incident to Lieutenant Chewblowski.

51.     Mr. Fennell was moved back out of Mr. Wiggins's cell, and was informed that Mr. Colarusso had moved Mr. Fennell without proper authorization.

52.     From August 24, 2018 through September 1, 2018, Defendant Colarusso repeatedly called Mr. Fennell a snitch in front of other inmates, and encouraged other inmates to call him a snitch.

53.     From August 24, 2018 through September 1, 2018, Defendant Colarusso repeatedly solicited other inmates to assault Mr. Fennell.

54.     On September 2, 2018, Mr. Fennell attempted to pass a note with his then-girlfriend's phone number on it to another inmate so that he could report the mistreatment Mr. Fennell was experience. Defendant Colarusso intercepted the note and directed another inmate to call and harass Mr. Fennell's then-girlfriend. Defendant Colarusso posted the phone number of Mr. Fennell's then-girlfriend above a bulletin board along with a note saying "Free Whore" above the number.

55.     On September 4, 2018, Mr. Fennell submitted an incident of occurrence to grieve his treatment by Mr. Colarusso.

- 8 -

56. Every day from September 5, 2018 to September 12, 2018, Defendant Colarusso called Mr. Fennell a snitch, threatened him, and solicited inmates to assault Mr. Fennell.

57. On September 13, 2018, Defendant Colarusso falsely accused Mr. Fennell of hiding medication and unnecessarily searched Mr. Fennell's cell. Defendant Colarusso again called Mr. Fennell a snitch.

58. On October 14, 2018, Defendant Colarusso again called Mr. Fennell at snitch.

59. On October 17, 2018, Defendant Colarusso again called Mr. Fennell a snitch, threatened him, and solicited inmates to assault Mr. Fennell.

60. On October 18, 2018, Defendant Colarusso told inmate Gregory Lewis that Mr. Fennell was "his favorite bitch" and "his personal court reporter" in a loud voice so that others could hear as well.

61. On October 25, 2018, Defendant Colarusso denied Mr. Fennell a shower after a 74-hour unit lock down, and denied Mr. Fennell a grievance. Defendant Colarusso again called Mr. Fennell a snitch, threatened him, and solicited inmates to assault Mr. Fennell.

62. Defendant Colarusso's hostile actions toward Mr. Fennell were in retaliation for Mr. Fennell's complaint to Lieutenant Chewblowski, and Mr. Fennell's other grievances against Defendant Colarusso.

63. On November 7, 2018, Mr. Fennell completed the paperwork for a complaint naming as defendants, *inter alia*, Defendants Horvath and Colarusso, and mailed it to the U.S. District Court for the Eastern District of Pennsylvania (the "November Complaint").

64. The November Complaint was filed on November 9, 2018 as No. 18-4870 before District Judge Kearney.

- 9 -

65.     At all relevant times after approximately November 9, 2018, Defendants were aware that Mr. Fennell was suing NCP employees in district court.

66.     As a direct and proximate cause of Defendant Colarusso's actions, Mr. Fennell suffered adverse medical effects, emotional harm, further time in E-Tier including a substantial reduction in privileges, and he was exposed to the further abuse detailed below.

### December 6, 2018 Incident

67.     On December 6, 2018, Mr. Fennell had a videoconference court hearing for a pending matter. Mr. Fennell went to exit the unit for his hearing.

68.     Mr. Fennell did not realize that he was wearing his prison jumper inside-out.

69.     In addition, Mr. Fennell's issued prison jumper was in a size 5X, which is much too large for Mr. Fennell.

70.     When Mr. Fennell reached the unit exit, the Corrections Officer present yelled at Mr. Fennell in a violent tone and ordered Mr. Fennell to return to his unit to fix his jumper.

71.     Mr. Fennell returned to his unit and turned his jumper right-side in, and then went back for his hearing.

72.     He encountered several other officers, including Defendants Heinrich, Wagner, and Gazzano. The officers ordered Mr. Fennell to unroll his pant legs, which Mr. Fennell had rolled up because the jumper was much too large for him.

73.     Mr. Fennell explained that if the legs were unrolled, the jumper could cause him to trip and fall.

74.     Defendant Heinrich replied in substance or effect "well then you could get another lawsuit on us."

- 10 -

75. Mr. Fennell participating in his hearing, after which he was separated from the other prisoners and handcuffed by Defendant Gazzano.

76. Defendant Gazzano told Mr. Fennell that he was "going to the hole."

77. Mr. Fennell asked for an explanation, and was told that his write-up was on its way with no further explanation.

78. Mr. Fennell was taken to a suicide-watch solitary confinement cell by Defendants Heinrich, Cruz, Wagner, and Gazzano.

79. Under the supervision of Defendants Heinrich and Cruz, Defendants Wagner and Gazzano walked Mr. Fennell into the cell while Mr. Fennell was still in handcuffs.

80. Defendant Gazzano stabbed Mr. Fennell in his left hand with a handcuff key.

81. Defendants Heinrich, Cruz, Wagner, and Gazzano were loud and physically aggressive with Mr. Fennell.

82. Mr. Fennell's handcuffs were removed, and Defendant Cruz proceeded to conduct an unnecessary strip search of Mr. Fennell.

83. Defendant Cruz ordered Mr. Fennell to remove all of his clothes, squat, and cough. Mr. Fennell complied.

84. After complying with the strip search, Defendant Cruz ordered Mr. Fennell to lift his scrotum, which Mr. Fennell refused, because it was unjustified and inappropriate in those circumstances, and made Mr. Fennell felt harassed and in danger.

85. Defendant Cruz called a nurse who happened to be in the area to enter the cell, and ordered her to lift Mr. Fennell's scrotum and penis.

86. The nurse who assisted Defendant Cruz appeared confused and neither trained for such a task nor assigned to perform such a task.

87.     After the nurse followed Defendant Cruz's order, Defendants Heinrich, Cruz, Wagner, and Gazzano retreated from the cell while keeping taser weapon or weapons trained on Mr. Fennell.

88.     During the placement of Mr. Fennell in the cell and subsequent strip search, Defendant Heinrich was holding back by its collar an intimidating dog at the threshold of the cell. The dog barked aggressively at Mr. Fennell throughout the process.

89.     After leaving Mr. Fennell in his cell, Defendants Heinrich, Cruz, Wagner, and Gazzano turned the heat in his cell up to ninety degrees.

90.     When he left Mr. Fennell's cell, Defendant Gazzano spit in Mr. Fennell's food.

91.     Mr. Fennell received another period of approximately 20 days in solitary confinement for what was alleged to be an infraction related to his prison jumper.

92.     As a direct and proximate cause of the actions of Defendants Heinrich, Cruz, Wagner, and Gazzano, Mr. Fennell suffered adverse medical effects, *inter alia*, physical pain, and severe and lasting emotional distress and humiliation.

93.     The requirements placed on Mr. Fennell and force used on Mr. Fennell by Defendants Heinrich, Cruz, Wagner, and Gazzano was unnecessary, unjustified, and excessive.

94.     The alleged infractions by Mr. Fennell relating to his prisoner jumper were pretextual. Actually, Defendants Heinrich, Cruz, Wagner, and Gazzano mistreated and abused Mr. Fennell in retaliation for his grievances and civil actions brought against NCP and its employees.

**February 15, 2019 Incident**

95.     In the months that followed after filing the November Complaint, in addition to pursuing grievances within the NCP system, Mr. Fennell pursued his case in district court, for

- 12 -

example, opposing a December 19, 2018 motion to dismiss with a 14-page brief filed January 4, 2019.

96.     On January 31, 2019, Mr. Fennell then filed a detailed, 15-page amended complaint, providing detailed allegations of events that occurred after November, 2018, including the December 6, 2018 incident described above.

97.     Throughout December 2018 and January 2019, Mr. Fennell obtained statements from a number of inmate witnesses in support of his allegations, and had these statements signed and notarized by an NCP notary.

98.     As of February 15, 2019, the unit of NCP in which Mr. Fennell was incarcerated was in a period of reduced privileges.

99.     On February 15, 2019, at approximately 3:30 p.m., Mr. Fennell had a conversation with Defendant Waterman regarding the privileges situation. Mr. Fennell told Defendant Waterman that he would be writing up a grievance of Defendant Waterman for what Mr. Fennell believed were unfairly imposed restrictions.

100.    Defendant Waterman responded to Mr. Fennell's comments by asking "was that a threat?"

101.    Because of Mr. Fennell's previous experiences with retaliation against his use of the grievance procedure and his filing of civil actions, Mr. Fennell was alarmed by Defendant Waterman's comment. Mr. Fennell twice asked Defendant Waterman to call a Lieutenant so that Mr. Fennell can ask for a grievance.

102.    Defendant Waterman eventually walked away to make a call. Mr. Fennell heard Defendant Waterman call Defendant Rinker and say "Fennell is being an asshole again. Can you guys come take him to the hole? [Laughter] OK, I'll tell him to lock it in."

- 13 -

103. Mr. Fennell asked Defendant Waterman if his comment was serious and Defendant Waterman confirmed, telling Mr. Fennell to "lock it in." Mr. Fennell went to his cell to pack his belongings.

104. Soon after, Defendants Rinker, Diacogiannis, Crowley, Nicholas, Thorman, Francis, and LaFragola (collectively, "February Extraction Group") arrived at Mr. Fennell's cell and told him to "cuff up."

105. The February Extraction Group, which is believed to be part of the NCP Correctional Emergency Response Team, was intimidating to Mr. Fennell due to their large size, all-black, military-style attire and equipment, and aggressive behavior. Mr. Fennell began to experience an anxiety attack, which in turn triggered his asthma.

106. Mr. Fennell asked for medical attention due to his anxiety attack and asthma.

107. The February Extraction Group did not provide or summon medical attention.

108. Defendants Crowley and Thorman entered Mr. Fennell's cell and handcuffed his hands behind his back.

109. Once Mr. Fennell was handcuffed, Defendant Thorman smacked Mr. Fennell in the back of his head so hard that Mr. Fennell fell forward to the floor.

110. Defendants Throman and Crowley picked Mr. Fennell up off the ground by his feet, holding Mr. Fennell upside-down and carrying Mr. Fennell off the unit in that position.

111. After exiting the unit, Defendant Crowley repositioned Mr. Fennell such that he was hanging upside-down in part by his shirt collar, which caused Mr. Fennell to choke.

112. Mr. Fennell was carried in this manner down four flights of stairs, and fell unconscious as a result of the choking.

- 14 -

113. Mr. Fennell awoke in a medical office and heard a nurse say "he's faking, put him in suicide level one."

114. Defendants Crowley and Thorman then carried Mr. Fennell in a "suitcase" style position by his handcuffed wrists and ankles outside the medical office.

115. Outside the medical office, multiple members of the February Extraction Group forced Mr. Fennell to the ground and began to jump on Mr. Fennell's body while he was handcuffed, with their knees applying crushing pressure to Mr. Fennell's back and head.

116. During the assault outside the medical office, by at least Defendant Thorman, Mr. Fennell's head was banged and crushed against the concrete floor and his arms were twisted violently.

117. Defendant Crowley then put Mr. Fennell in a "hog tie" position by attempting to bend Mr. Fennell's feet back far enough to reach his ankles.

118. During the assault outside the medical office, Mr. Fennell felt an officer use a finger or thumb to penetrate his rectum.

119. Mr. Fennell screamed for help, and in response, Defendant Rinker said "here, put this over his face so no one hears him."

120. Members of the February Extraction Group then placed a ski-mask-like cloth over Mr. Fennell's face, blinding him and making it very difficult for him to breathe.

121. Mr. Fennell then felt himself being carried, and then slammed down face-first, chipping one of his teeth.

122. Members of the February Extraction Group again applied crushing force to Mr. Fennell's head and body.

123.     Defendant Crowley and other members of the February Extraction Group pinned Mr. Fennell's head to the concrete floor using their knees with such force that Mr. Fennell felt the sensation of his bones being crushed, and then became unconscious.

124.     Mr. Fennell woke up to nurses asking him if he was okay. Mr. Fennell said he was not, because his wrists, back, jaw, and face bones felt broken.

125.     Mr. Fennell was returned to solitary confinement and was not treated for his injuries promptly.

126.     As a direct and proximate cause of the actions of the members of the February Extraction Group, Mr. Fennell suffered adverse medical effects, *inter alia*, ongoing pain, migraines, and lasting emotional distress.

127.     The force applied by the members of the February Extraction Group was unnecessary, unjustified, and excessive.

128.     The members of the February Extraction Group assaulted Mr. Fennell in retaliation for his grievances and civil actions brought against NCP and its employees.

## Further Allegations

129.     At all times during the incidents described in the preceding paragraphs, Mr. Fennell was a pretrial detainee.

130.     At all times during the incidents described in the preceding paragraphs, Defendants acted under the color of state law in their roles as NCP employees or agents.

131.     Mr. Fennell was released from Northampton County Prison on or about June 4, 2019.

## COUNT 1: § 1983

### (Deprivation of Fifth and Sixth Amendment Rights – Against Defendant Horvath in his Individual Capacity)

132. Mr. Fennell incorporates by reference the preceding allegations.

133. Mr. Fennell believes and avers that Mr. Horvath intentionally and maliciously deprived Mr. Fennell of his Fifth and Sixth Amendment rights in furtherance of Mr. Horvath's investigation.

134. Mr. Fennell's injuries were a foreseeable and direct consequence of all of the above acts and omissions by Defendant Horvath.

135. All of these actions violated Mr. Fennell's clearly established rights under the Fifth and/or Sixth Amendments to the United States Constitution, of which a reasonable officer would have known.

136. Therefore, Mr. Fennell is entitled to the relief set forth below.

## COUNT 2: § 1983

### (Use of Excessive and Unreasonable Force in Violation of the Eigth and Fourteenth Amendments – Against Defendants Colarusso, Cruz, Heinrich, Gazzano, Wagner, Rinker, Diacogiannis, Waterman, Crowley, Thorman, Francis, Nicholas, and LaFragola in Their Individual Capacities)

137. Mr. Fennell incorporates by reference the preceding allegations.

138. Mr. Fennell believes and avers that Defendants Colarusso, Cruz, Heinrich, Gazzano, Wagner, Rinker, Diacogiannis, Waterman, Crowley, Thorman, Francis, Nicholas, and LaFragola intentionally and maliciously acted with excessive and unreasonable force for the purpose of punishing or harming Mr. Fennell, rather than in a good-faith effort to maintain or restore discipline.

139. Mr. Fennell's injuries were a foreseeable and direct consequence of all of the above acts and omissions by Defendants Colarusso, Cruz, Heinrich, Gazzano, Wagner, Rinker, Diacogiannis, Waterman, Crowley, Thorman, Francis, Nicholas, and LaFragola.

- 17 -

140.    All of these actions violated Mr. Fennell's clearly established rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, of which a reasonable officer would have known.

141.    Therefore, Mr. Fennell is entitled to the relief set forth below.

## COUNT 3: § 1983

### (Retaliation for Exercise of Protected Rights – Against All Defendants in Their Individual Capacities)

142.    Mr. Fennell incorporates by reference the preceding allegations.

143.    As described above, Mr. Fennell was engaged in constitutionally protected conduct, e.g., requesting counsel, remaining silent, and defending his rights through the informal complaints, NCP's grievance system, and civil actions filed in district court.

144.    As described above, Mr. Fennell suffered adverse actions at the hands of Defendants, e.g., transfers to solitary confinement and reduction of privileges; verbal harassment; physical abuse; and sexual abuse.

145.    Mr. Fennell avers and believes that his engagement in constitutionally protected conduct was a substantial or motivating factor in Defendants' decisions adverse to Mr. Fennell described above.

146.    As described above, Mr. Fennell's allegations of retaliation are supported by the temporal proximity between his grievances and district court filings and the alleged retaliatory actions as well as the pattern of antagonism from August 2018 through February 2019.

147.    Mr. Fennell further avers and believes that the harmful actions described above were made intentionally, maliciously, and specifically in retaliation for Mr. Fennell's defense of his rights through the informal complaints, NCP's grievance system, and civil actions filed in district court.

148.     Mr. Fennell's injuries were a foreseeable and direct consequence of all of the above acts and omissions by the Defendants.

149.     All of these actions were intended to, and actually did, impair Mr. Fennell's clearly established rights under the Fifth, Sixth, Eighth and/or Fourteenth Amendments to the United States Constitution, of which a reasonable officer would have known.

150.     Therefore, Mr. Fennell is entitled to the relief set forth below.

## PRAYER FOR RELIEF

Wherefore, Mr. Fennell requests entry of judgment in his favor and against Defendants as follows:

A.     Entry of judgment that Defendants have infringed one or more of his Constitutional rights;

B.     Nominal damages;

C.     Compensatory damages;

D.     Punitive damages;

E.     Reasonably attorneys' fees and costs; and

F.     For such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## DEMAND FOR A JURY TRIAL

Mr. Fennell respectfully demands a trial by jury on all claims and issues so triable.


Dated: September 11, 2019                    Respectfully submitted,



                                             John Frank Murphy
                                             Daniel J. Goettle

Craig M. Brown (EDPA Admission Pending)
BAKER & HOSTETLER LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Phone: (215) 568-3100
Fax: (215) 568-3439
dgoettle@bakerlaw.com
johnmurphy@bakerlaw.com
cmbrown@bakerlaw.com

*Attorneys for Plaintiff JaMarcus Fennell*

MAK

19cv 4183

JS 44 (Rev 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

## I. (a) PLAINTIFFS
JaMarcus Fennell

**DEFENDANTS**
Charles Horvath et. al.

**(b)** County of Residence of First Listed Plaintiff   Northampton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Northampton
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John F. Murphy, Daniel J. Goettle, and Craig M. Brown, Baker Hostetler, Cira Centre, 12th Floor, 2929 Arch Street, Philadelphia, PA 19104-2891  215-568-3100

Attorneys *(If Known)*
David J. MacMain and Samantha A. Ryan, The MacMain Law Group, LLC; 433 W Market Street, Suite 200, West Chester, PA 19382  484-318-7704

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U S Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U S Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for  Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other ☒ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
42 U.S.C. Section 1983
Brief description of cause
violations of rights under Fifth, Sixth, Eighth, and Fourteenth Amendments to U.S Constitution

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE  The Hon Mark A Kearney

DOCKET NUMBER  18-4870; 19-1972

DATE
09/11/2019

SIGNATURE OF ATTORNEY OF RECORD

SEP 11 2019

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG JUDGE

19-CV-4183

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____   JaMarcus Fennell, 1051 Washington Street, #6, Easton, PA 18042 _____

Address of Defendant: _____   _____   _____   ____

Place of Accident, Incident or Transaction: _____ Northampton County Prison _____

---

**RELATED CASE, IF ANY:**

Case Number: 19-1972 and 18-4870   Judge: The Hon. Mark A. Kearney   Date Terminated: 08/12/2019

Civil cases are deemed related when *Yes* is answered to any of the following questions

| | | | | |
|---|---|---|---|---|
| 1 | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2 | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☑ | No ☐ |
| 3 | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4 | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE 09/11/2019   _____   *Attorney-at-Law / Pro Se Plaintiff*   206307   *Attorney I D # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

*A.   Federal Question Cases:*

☐ 1   Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2   FELA
☐ 3   Jones Act-Personal Injury
☐ 4   Antitrust
☐ 5   Patent
☐ 6   Labor-Management Relations
☑ 7   Civil Rights
☐ 8   Habeas Corpus
☐ 9   Securities Act(s) Cases
☐ 10  Social Security Review Cases
☐ 11  All other Federal Question Cases
      *(Please specify)*

*B.   Diversity Jurisdiction Cases:*

☐ 1   Insurance Contract and Other Contracts
☐ 2   Airplane Personal Injury
☐ 3   Assault, Defamation
☐ 4   Marine Personal Injury
☐ 5   Motor Vehicle Personal Injury
☐ 6   Other Personal Injury *(Please specify)* _____
☐ 7   Products Liability
☐ 8   Products Liability – Asbestos
☐ 9   All other Diversity Cases
      *(Please specify)*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, John Frank Murphy _____, counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs

☐ Relief other than monetary damages is sought

SEP 11 2019

DATE 09/11/2019   _____   *Attorney-at-Law / Pro Se Plaintiff*   206307   *Attorney I D # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F R C P 38.

*Civ. 609 (5/2018)*



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

JaMarcus Fennell : CIVIL ACTION
: 
v. : 
: 
Charles Horvath *et. al.* : NO. 19cv 4183

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                 ( )

(f) Standard Management   Cases that do not fall into any one of the other tracks.  (X)

September 11, 2019                                            JaMarcus Fennell
_____          _____          _____
**Date**                    **Attorney-at-law**         **Attorney for**
215-568-3100                215-568-3439                johnmurphy@bakerlaw.com
_____          _____          _____
**Telephone**               **FAX Number**              **E-Mail Address**

(Civ. 660) 10/02

SEP 11 2019